DIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| R&Q REINSURANCE COMPANY, f/k/a ACE AMERICA REINSURANCE COMPANY, <br><br> Petitioner/Cross-Respondent, <br><br> v. <br><br> AMERICAN MOTORIST INSURANCE COMPANY and LUMBERMENS MUTUAL CASUALTY COMPANY, <br><br> Respondents/Cross-Movants. | Case No. 10 C 2825 <br><br> Hon. George W. Lindberg |

## MEMORANDUM OPINION AND ORDER

Before the Court are cross-motions to confirm and vacate the award in an underlying arbitration. Petitioner R&Q Reinsurance Company ("R&Q") is seeking to vacate the arbitration award. Respondents American Motorist Insurance Company and Lumbermens Mutual Casualty Company (collectively "Lumbermens") are seeking confirmation of the award. For the reasons set forth more fully below, R&Q's motion to vacate is denied and Lumbermens' motion to confirm is granted.

*I. Jurisdiction*

This Court has undisputed subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The parties have diverse citizenship and the amount in controversy exceeds $75,000. The Court has jurisdiction to entertain the parties' cross-motions to confirm/vacate the disputed arbitration award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*.

*II. Relevant Facts*

The underlying arbitration award stems from a reinsurance contract dispute between

R&Q and Lumbermens regarding a series of Blanket Excess of Loss Reinsurance Contracts (collectively the "Treaties") that the parties entered into between 1976 and 1983. On June 19, 2007, Lumbermens demanded arbitration against R&Q pursuant to the arbitration clauses in the Treaties. In the arbitration, Lumbermens sought to recover from R&Q amounts billed under the Treaties relating to three insureds: the Artra Group ("Artra"), Rapid American Corporation ("Rapid"), and the Roman Catholic Archdiocese of Boston ("Archdiocese").

The parties selected a three-person arbitration panel (the "Panel") that met for an organizational meeting on February 5, 2008. At that meeting, the Panel and the parties agreed on certain parameters for the arbitration. When asked what type of "Final Award" his client expected from the Panel, Lumbermens' counsel stated:

> So what I think that we would appreciate getting from the panel is something more than simply Party A wins, here's the amount. I think a paragraph as an illustration explanation that says here is what our decision was based on or if there is a crucial finding on a disputed fact, for example, that because of this fact, we find as follows so that the parties have an understanding of how the claims were determined and through the extent that there are open claims, that sort of understanding would be helpful in perhaps preventing future disputes or at least allowing parties to move forward in an educated manner.

R&Q's counsel agreed with Lumbermens' counsel and stated:

> . . . the award you win and you lose probably won't be very helpful. What we've done recently I think which has been helpful, and it seems like it might be helpful in a case like this, but we may want to reserve as we go forward as we get closer to the hearing to make a decision, is the parties provide the draft awards or draft order for the panel, each side seeking the specific relief that they're seeking; and therefore, the panel can see maybe even prior to the hearing so the panel can use that as a guide , adopt it or adopt some from one or some from another or come up with your own but at least the panel is very familiar with the types of specific relief that each side is seeking. I think that sometimes is very helpful. But, again, I think from the standpoint of a reasoned award or a petitioner wins or respondent wins, I wouldn't want the later, but as we get closer to the hearing date, I think it would be best if we revisited this.

The umpire arbitrator then responded:

> If I understand this, neither of you want a one-line award. . . . And hopefully neither of you want a legally reasoned [award].

Counsel for both sides agreed that they did not want a legally reasoned award.

At the arbitration, Lumbermens sought an award of $1,454,989.80, plus interest, for unpaid claims. Specifically, Lumbermens sought $349,649.99 on the Artra claim, $241,571.83 on the Rapid claim, and $863,767.98 on the Archdiocese claim. After a four-day arbitration hearing in December 2009, each party submitted a draft proposed final arbitration award to the Panel in January 2010. Lumbermens' draft award was slightly longer than one single-spaced page and consisted of 6 paragraphs. R&Q's draft award was three single-spaced pages and consisted of 18 paragraphs.

The Panel's Final Award, which it issued on February 5, 2010, closely resembled the draft award Lumbermens submitted. The Panel found in favor of Lumbermens and awarded it $1,454,989.80, plus interest. The Panel did not include a specific interest figure in its Final Award. Instead, the Panel ordered Lumbermens to provide R&Q and the Panel "with a written worksheet accounting of interest so awarded" within 5 business days. The Panel gave R&Q an additional 5 business days to "to review and comment upon the amounts claimed." The Final Award further stated that "[t]he panel will then issue an Order Directing Payment of Interest Awarded that, once issued, will form part of and be incorporated by reference into this Final Award." In its Final Award, the Panel cited to the relevant contractual clause in the Treaties, the Aggregate Extension Clause, that it found required payment of the $1,454,989.80 award by R&Q to Lumbermens.

On February 12, 2010, five business days after the issuance of the February 5, 2010 Final Award, Lumbermens submitted its interest calculations to R&Q and the Panel. Lumbermens sought an interest award of $366,522.83. On February 22, 2010, what appears to be six business days after February 12, 2010, R&Q sent Lumbermens and the Panel a letter containing its objections to Lumbermens' interest calculations. In that letter, R&Q asserted that, based on the Panel's Final Award, Lumbermens was only entitled to an interest award of $114,430.47.

On March 15, 2010, after receiving and reviewing the parties' letters regarding the appropriate interest calculation, the Panel issued an "Order Directing Payment of Interest Awarded." In that order, the Panel directed R&Q to pay Lumbermens $350,000.00 in interest. The Panel further stated that "[a]s provided by the Final Award, this Order forms a part of and is hereby incorporated into the Final Award." The Panel did not provide any further explanation for how it arrived at the $350,000.00 interest figure.

On April 13, 2010, R&Q sent the Panel and Lumbermens a lengthy letter requesting that the Panel reconsider the February 5, 2010 final award based on the evidence adduced at the hearing, and reconsider the March 15, 2010 award, which R&Q characterized as "a grievous error which has no factual or legal support." R&Q also requested that the Panel "issue a reasoned award setting forth the bases for both Awards."

On May 3, 2010, the Panel responded to R&Q's April 13, 2010 letter as follows:

> Having conducted a full evidentiary hearing, considering the testimony and evidence presented by the Parties, the arguments advanced therein and, following deliberations, by majority the Panel issued its February 5, 2010 Final Award. Further, as provided for in the Final Award, the Panel fully considered the Parties' written submissions with respect to interest issues, deliberated and issued its March 15, 2010 Order Directing Payment of Interest Awarded. The Panel is *functus officio*, will not reconsider it's [sic] prior Orders and will not take up any

4

other requests for relief as sought by R&Q.

*III. Legal Analysis*

R&Q argues that the February 5, 2010 Final Award and the March 15, 2010 order must be vacated pursuant to 9 U.S.C. § 10(a)(3) and 10(a)(4) because R&Q was prejudiced by the Panel's misconduct and decision to exceed its powers by failing and refusing to issue a "reasoned award" pursuant to the agreement and instructions of the parties. R&Q further argues that the March 15, 2010 order violated the terms of the February 5, 2010 Final Award by incorrectly calculating Lumbermens' interest award.

*A. Timeliness of R&Q's Motion to Vacate*

As an initial matter, the Court must consider whether R&Q's motion to vacate is timely under Section 12 of the FAA. *See* 9 U.S.C. § 12. Section 12 provides that "[n]otice of a motion to vacate an award must be served upon the adverse party or its attorney within three months after the award is filed or delivered." *See also Olson v. Wexford Clearing Services Corp.*, 397 F.3d 488, 490 (7th Cir. 2005). "A party who failed to comply with the statutory precondition of timely service of notice forfeits the right to judicial review of the award." *Arch Development Corp. v. Biomet*, 02 C 9013, 2003 WL 21697742 (N.D. Ill. July 30, 2003), *quoting Piccolo v. Dain, Kalman & Quail, Inc.*, 641 F.2d 598, 600 (8th Cir. 1981). "The plain language of §12 does not provide for any exceptions to the three-month window and says nothing about tolling." *Olson*, 397 F.3d at 490.

The Panel delivered its Final Award on February 5, 2010. R&Q filed the instant motion to vacate and served Lumbermens with notice of the motion on May 6, 2010. Lumbermens argues that R&Q's motion is untimely because it was filed and served one day after the three-

5

month deadline set forth in Section 12. R&Q responds that "three months" should be read as "ninety days," and that its motion is timely under such a reading. Although R&Q cites several cases in which courts used "three months" and "ninety days" interchangeably, none of the courts in those cases held that "three months" should be interpreted as "ninety days" in the context of Section 12, and none of the cases presented a factual situation such as this one, where such an interpretation would make a difference under Section 12. Section 12 unambiguously prescribes a deadline of three months, and this Court must apply it as it is written. *See Tribue v. U.S.*, 826 F.2d 633, 636-37 (7th Cir. 1987) (acknowledging that, in the context of the Federal Tort Claims Act, the prescribed six-month limitation period may result in a limitations period with a variable number of days, depending on the months included in the period, but affirming that "[t]his court . . . may only interpret §2401(b) as Congress has written it"). This Court agrees that under the plain language of Section 12, R&Q's motion to vacate is untimely. *See Webster v. A.T. Kearney, Inc.*, 507 F.3d 568, 574 (7th Cir. 2007) (repeatedly referring to the "three month" statutory deadline, and denying as untimely a motion to vacate that was filed and served on April 5, 2006, "three months and one day" after the final arbitration award was delivered on January 4, 2006).

To the extent R&Q argues that the Panel's February 5, 2010 is not a final order and that the three-month filing deadline began to run after the Panel issued its Order Directing Payment of Interest Awarded on March 15, 2010, the Court disagrees. The February 5, 2010 Final Award specifically states that it is a "final and fully enforceable arbitration Final Award." It further states that the Order Directing Payment of Interest Awarded "once issued, will form part of and be incorporated by reference into this Final Award." The March 15, 2010 order involved a simple interest calculation. The fact that the February 5, 2010 Award did not provide a specific

6

interest figure does not affect its finality. *See Local 15 Inter. Broth. of Elec. Workers v. Commonwealth Edison Co.*, 03 C 9127, 2004 WL 1535836 at *2 (N.D. Ill. July 1, 2004) ("Where the award includes a monetary payment, the lack of an exact dollar amount will not prevent finality as long as the calculation is simply ministerial."). For these reasons, R&Q's motion to vacate is denied as untimely.

    B. *Merits of R&Q's Motion to Vacate*

Even if R&Q had timely filed its motion to vacate, the motion fails on the merits. The Seventh Circuit is very clear that "[j]udicial review of arbitration awards is tightly limited; perhaps it ought not be called "review" at all. By including an arbitration clause in their contract, the parties agree to submit disputes arising out of the contract to a nonjudicial forum, and we do not allow the disappointed party to bring his dispute into court by the backdoor." *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir. 1994). In other words, courts "will not set aside an arbitral award so long as the arbitrator interpreted the parties' agreement at all." *Prostyakov v. Masco Corp.*, 513 F.3d 716, 723 (7th Cir. 2008). This Court's authority to vacate an arbitration award is limited to 4 instances, including:

> where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced.

9 U.S.C. § 10(a)(3).

Section 10(a)(4) authorizes the Court to vacate an arbitration award "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4).

R&Q argues that its motion to vacate should be granted for the following three reasons:

7

(1) the Panel failed to issue a "reasoned award"; (2) in failing to issue a "reasoned award" the panel was guilty of misconduct and exceeded its powers; and (3) R&Q was prejudiced by the Panel's misconduct.

First the Court turns to whether the Panel issued a "reasoned award." There is no established statutory or case law definition of a "reasoned award." As best this Court can glean, a "reasoned award" constitutes an award with more specificity than a simple one-line award stating "party x wins and party y loses," but less specificity than an award with findings of fact and conclusions of law. *See Arch Development Corp.*, 2003 WL 21697742 at *4 (N.D. Ill. July 30, 2003). There is a broad spectrum between a one-line award and an extensive recitation of findings of fact and conclusions of law.

It appears that the Panel's Final Award falls within that broad spectrum and was sufficient to constitute a reasoned award. The Final Award did more than simply provide a one-line finding that one party won and one party lost. The Final Award included 6 paragraphs and spanned more than one single-spaced page. Importantly, the Final Award included the relevant contractual clause and factual finding that drove the Panel's award decision. It also closely mirrored the draft award Lumbermens submitted to the Panel in January 2010, per the parties agreement at the February 5, 2008 organizational meeting. Accordingly, the Court finds that the Panel issued a "reasoned award."

Next, the Court turns to whether the Panel engaged in misconduct or exceeded its powers and thus prejudiced R&Q. R&Q's claim that the Panel engaged in misconduct and exceeded its powers is premised on R&Q's belief that the Panel failed to issue a reasoned Final Award. As stated above, the Court found that the Panel's award was reasoned. Further, "failure to provide a

8

reasoned award cannot form the basis for finding that the Arbitrator exceeded his powers." *Arch Development Corp.*, 2003 WL 21697742 at *4 (N.D. Ill. July 30, 2003).

R&Q also takes issue with the Panel's $350,000.00 interest award. That award was within the range proposed by the parties. Lumbermens sought an interest award of $366,522.83 and R&Q proposed an interest award of $114,430.47. Contrary to R&Q's assertion, the Panel's interest award is not "irrational." It was within the range proposed by the parties and therefore will not be vacated by this Court.

Finally, there is no evidence of "misbehavior" on the part of the Panel. Section 10(a)(3) has been interpreted as requiring the Panel to "provide a fundamentally fair hearing." *Sphere Drake Ins. Ltd. v. All Am. Life Ins. Co.*, 2004 WL 442640 at *4 (N.D. Ill. Mar. 8, 2004). A hearing is fundamentally fair if it "meets the minimal requirements of fairness – adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator." *Slaney v. Int'l Amateur Fed'n*, 244 F.3d 580, 592 (7th Cir. 2001). There is no question that the Panel provided the parties with adequate notice, a hearing on the evidence, and that they issued an impartial Final Award. Accordingly, the Panel did not engage in misbehavior under the FAA and this Court will not vacate the Final Award.

*C. Lumbermens' Motion to Confirm*

Section 9 provides that if a proper application for an order to confirm an arbitration award is made within one year after the award is made, "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. This Court declined to vacate the Final Award and Lumbermens filed a timely motion to confirm the Final Award. Therefore, Lumbermens' motion to confirm the February 5,

2010 Final Award is granted.

*IV. Conclusion*

For the reasons set forth more fully above, R&Q's motion to vacate the arbitration award is denied. Lumbermens' motion to confirm the arbitration award is granted.

ORDERED: Petition to vacate arbitration awards [1] is denied. American Motorists Insurance Company's and Lumbermens Mutual Casualty Company's cross-petition to confirm arbitration award [19] is granted. The arbitration panel's Final Award dated February 5, 2010 is confirmed pursuant to Section 9 of the FAA and judgment is entered on the Final Award pursuant to Section 13 of the FAA. All matters pending before the Court having been resolved, this civil case is terminated.

E N T E R: _/s/ George W. Lindberg_
George W. Lindberg
SENIOR U.S. DISTRICT JUDGE

DATED: October 14, 2010